# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| In re:<br><br>　　　Jose A. Saldivar<br><br><br>　　　　　　Debtor(s) | Case No.: 20-07364<br><br>Chapter 13 Reconverted from Ch. 7<br><br>Hon. David D. Cleary |

## NOTICE OF FILING

TO: Marilyn O. Marshall, Chapter 13 Trustee (via the court's electronic notice for registrants).

Please take notice that on November 21, 2022, I filed with the Clerk of the United States Bankruptcy Court, the following document(s) which are attached:

　　DEBTOR'S RESPONSE TO THE CHAPTER 13 TRUSTEE'S OBJECTION TO CONFIRMATION

## CERTIFICATE OF SERVICE

I, Arthur Corbin, certify that I served a copy of this notice and the attached response on the Chapter 13 Trustee via electronic notice on November 21, 2022.

　　　　　　　　　　　　　　　　　　　　　　　/s/ Arthur Corbin
　　　　　　　　　　　　　　　　　　　　　　Arthur Corbin, ARDC #6305658
　　　　　　　　　　　　　　　　　　　　　　Attorney for Debtor
　　　　　　　　　　　　　　　　　　　　　　CORBIN LAW FIRM, LLC
　　　　　　　　　　　　　　　　　　　　　　636 S. River Road, Suite 201
　　　　　　　　　　　　　　　　　　　　　　Des Plaines, IL 60016
　　　　　　　　　　　　　　　　　　　　　　Tel: (773) 570-0054 | arthur@corbin-law.com

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| In re:<br>    Jose A. Saldivar<br><br>    Debtor(s) | Case No.: 20-07364<br><br>Chapter 13 Reconverted from Ch. 7<br><br>Hon. David D. Cleary |

**DEBTOR'S RESPONSE TO THE CHAPTER 13 TRUSTEE'S
OBJECTION TO CONFIRMATION**

**STATEMENT OF FACTS**

On March 14, 2020, Jose A. Saldivar ("Mr. Saldivar" or "Debtor") filed a voluntary petition under chapter 13 of the U.S. Bankruptcy Code[1] ("Voluntary Petition"). Dkt. #1. On the same day, Mr. Saldivar filed his Chapter 13 Statement of Your Current Monthly Income and Calculation of Commitment Period which determined he is an above-median-income debtor who must propose a plan with an applicable commitment period of five years. Dkt. #2. On June 29, 2020, the Court entered an order confirming the second amended plan [Dkt. #21] ("Confirmed Plan"). Dkt. #23. The first payment under the Confirmed Plan was due within 30 days from the filing of his Voluntary Petition.

On April 13, 2022, approximately twenty-five months after filing the Voluntary Petition and after making twenty-four payments, Mr. Saldivar converted his chapter 13 case to a chapter 7 case. *See* Dkt. #27 (Notice of Voluntary Conversion to Chapter 7). On May 16, 2022, Mr. Saldivar filed a motion to convert the chapter 7 case back to chapter 13. Dkt. #49. On May 20, 2022, the United States Trustee filed a notice of presumption of abuse pursuant to 11 U.S.C. § 704(b)(1)(A). Neither Marilyn O. Marshall, the Standing Chapter 13 Trustee ("Trustee") nor any party in interest objected

---

[1] 11 U.S.C. §§ 101 - 1532. All future references to "Code," "Section," and "§" are to the Bankruptcy Code, Title 11 of the United States Code, unless otherwise indicated.

Page **1** of **12**

to the motion. On June 8, 2022, the Court entered an order converting the case back to chapter 13. Dkt. #57.

On June 15, 2022, the Clerk issued the Notice of Chapter 13 Bankruptcy Case. Dkt. #60. The Notice set a new meeting of creditors date, a new claims bar date, and a new confirmation date. *Id.* On June 22, 2022, Mr. Saldivar filed an Amended Chapter 13 Statement of Your Current Monthly Income and Calculation of Commitment Period [Dkt. #62], an Amended Chapter 13 Calculation of Your Disposable Income [Dkt. #63], Supplemental Schedules I and J [Dkt. #64], and an amended chapter 13 plan ( "Post-Reconversion Plan"). Dkt. #65. The amended and supplemental forms incorporated a new household member (child born) increasing the household size from 3 to 4 members[2] and a new tax obligation to the IRS for underpaid taxes for the 2021 tax year.

Mr. Saldivar's Post-Reconversion Plan incorporated the payments and the term length of the Confirmed Plan. The Post-Reconversion Plan also provided for future payments remaining on the five-year repayment period determined under the Confirmed Plan[3].

On July 28, 2022, the Trustee filed a motion to dismiss for failure to make plan payments in accordance with the Confirmed Plan. Dkt. #70. The default consisted of the missed payments resulting from the conversion to chapter 7 and from at least one reduced future payment proposed in the Post-Reconversion Plan. Mr. Saldivar cured the default and the Trustee withdrew the motion to dismiss on September 19, 2022. Dkt. #78.

On August 31, 2022, the Trustee filed an objection to the confirmation of Mr. Saldivar's Post-Reconversion Plan ("Objection to Confirmation"). Dkt. #75. Mr. Saldivar has not yet filed an amended post-reconversion plan.

---

[2] Although the household size increased from 3 to 4 members, Mr. Saldivar is still an above-average-income debtor and the applicable commitment period remains 5 years.
[3] The 5-year commitment period under the Original Confirmed Plan begins on April 13, 2020, 30 days after the date of filing of the Voluntary Petition (March 14, 2020) and ends on April 13, 2025.

## PROCEDURAL POSTURE

On October 24, 2022, the Court held a status hearing on the confirmation of Mr. Saldivar's Post-Reconversion Plan and the Trustee's Objection to Confirmation. The Court entered an order giving Mr. Saldivar to November 21, 2022, to respond to the Trustee's Objection.

The Trustee objects to confirmation on 4 grounds, *see generally* Trustee's Obj. to Confirmation: (1) the amount of the childcare expense, Obj. ¶ 13; (2) the amount of the tax deduction, *id.* ¶ 14; (3) the term of the plan, s*ee id.* ¶¶ 15, 17, 18; and (4) the "up and down prospective plan payments." *Id.* ¶ 16.

Mr. Saldivar believes the childcare and tax expenses, and the total number of payments (60 as opposed to 57) can be resolved between the parties by a future plan amendment and, without waiving any future rights to do so in the future, Mr. Saldivar does not respond to Trustee's Objection to Confirmation based on those grounds. Mr. Saldivar does respond to the Trustee's objections as outlined in paragraphs 15, 16, and 18, which all relate to the length of term of the Post-Reconversion Plan.

## ISSUES PRESENTED

Whether the sixty-month repayment period of the Post-Reconversion Plan filed in this reconverted chapter 13 case commences on the due date of the first plan payment under the Confirmed Plan or the date of conversion.

## LAW AND ANALYSIS

According to the Supreme Court, "[t]he Bankruptcy Code provides diverse courses overburdened debtors may pursue to gain discharge of their financial obligations, and thereby a 'fresh start.'" *Harris v. Viegelahn*, 575 U.S. 510, 513 (2015) (citation omitted). Mr. Saldivar's course to a fresh start has thus far taken him from filing his Voluntary Petition under chapter 13, to converting the case to chapter 7, and to re-converting the case back to chapter 13.

The chapter 13 trustee seeks to weaponize this reconversion stage of Mr. Saldivar's course towards a fresh start by forcing him to propose a post-reconversion chapter 13 plan with a fresh sixty-month repayment period commencing on the date of the conversion — as opposed to relating back to the date of the first payment made under the Confirmed Plan. A restart of the repayment period from the date of conversion would amount to a seven-year applicable commitment period and therefore flies against legislative intent, is unsupported by case law, and is expressly prohibited by the provision of the Code.

### I. The Plain Language of the Bankruptcy Code Dictates That Above-Median-Income Chapter 13 Debtors in Reconverted Chapter 13 Cases Must Propose Plans With a Maximum Repayment Period of No More Than Five Years Commencing From the Date of the First Plan Payment Due Under the Original Chapter 13 Plan

Section 1325, § 1322, § 1326 and § 348 work in tandem to dictate that a post-reconversion plan period cannot exceed a term of 5 years which commences with the first plan payment due under the original pre-reconversion chapter 13 plan.

#### A. Section 1325 Provides for an Applicable Commitment Period of Not Less Than Five Years for Above-Median-Income Chapter 13 Debtors

Section 1325 provides in relevant part that "If the trustee…objects to the confirmation of the plan, than the court may not "approve the plan unless, as of the effective date of the plan…the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan" 11 U.S.C. § 1325(b)(1). (emphasis added) Section 1325(b)(4)(A)(ii) further dictates that "the 'applicable commitment period' …shall be not less than 5 years" for above-median-income debtors. "The 'applicable commitment period,' is the duration of time that the debtor is 'obligated to serve [if the

debtor chooses to remain in Chapter 13].'") *In re Kinne*, No. 19-49692, at *3 (Bankr. E.D. Mich. Sep. 11, 2020) (citing "*Baud v. Carroll*, 634 F.3d 327, 338 (6th Cir. 2011)).

**B. Section 1322 Restricts the Maximum Repayment Period to No More Than Five Years**

Section 1322(d)(1), in turn, provides that "the plan may not provide for payments over a period that is longer than 5 years." 11 U.S.C. § 1322(d)(1); *see also In re Chappell,* 984 F.2d 775, 780 (7th Cir. 1993) (commenting that a chapter 13 plan "may not exceed five years under any circumstances"); *In re Humes*, 579 B.R. 557, 562 (Bankr. D. Colo. 2018) ("The Bankruptcy Code is *very explicit* that chapter 13 plans may not extend beyond a five-year term.") (emphasis added); *In re Albert*, 634 B.R. 380, 388 (Bankr. D. Colo. 2021) ("Congress set a hard five-year limit on plan payments in Chapter 13 bankruptcy cases."); *In re Albert*, 634 B.R. at 388 (Stating that "[n]umerous statutory provisions confirm the [five-year] restriction" and citing to § 1322(d)(1) which applies to above-median-income debtors and limits payments to a period of five years; § 1325(b)(4)(A)(ii) which defines the "applicable commitment period" of not less than five years for above-median income debtors; and § 1329(c) which proscribes the extension of the payment period beyond five years after the first payment under the original confirmed plan was due.); *In re Grant*, 428 B.R. 504, 508 (Bankr. N.D. Ill. 2010) ("The Court finds that § 1322(d) limits Chapter 13 plans to a maximum of five years. The Court will not ignore this limitation.")

**C. Section 1326 Requires the Repayment Period in a Voluntary Chapter 13 Bankruptcy Case to Start Within 30 Days From the Date of Filing of the Petition.**

The Bankruptcy Code is also very explicit that the applicable commitment period starts within 30 days from the date of filing of the petition. Section 1326(a)(1), provides that "[u]nless the court orders otherwise, the debtor *shall* commence making payments not later than 30 days after the date of the filing of the plan or the order for relief, whichever is earlier…." 11 U.S.C. 1326(a)(1). In a

Page **5** of **12**

voluntary case, the filing of the petition "constitutes the order for relief." 11 U.S.C. § 301(b) (emphasis added). The plain language of the statute is supported by "a strong majority of courts and bankruptcy treatises [which] hold that the 60 month period runs from the date the first payment is due under Section 1326(a)(1)" (i.e., "not later than 30 days after" [the petition date])...." Id. (citing *In re Lundy*, 2016 WL 6108524, at *12-13 (Bankr. N.D. Ohio Oct. 19, 2016) (internal quotation marks omitted) (collecting cases). Only "[a] few courts have determined that the five-year period starts when a Chapter 13 plan is confirmed." *In re Albert*, 634 B.R. 380, 389 (Bankr. D. Colo. 2021). Out of the small minority, *West v. Costen*, 826 F.2d 1376, 1378 (4th Cir. 1987) is the "only Court of Appeals decision [that] endorses using the confirmation date for the start date of the five-year period while the majority of Bankruptcy Courts have rejected that approach and instead utilize Section 1326(a)(1) as the basis for the start date." *Id.* at 391.

The bankruptcy courts in the Northern District of Illinois align with the strong majority and adhere to the plain language approach of § 1326(a)(1) as in this district chapter 13 debtors commence plan payments within 30 days from the date of the petition.

**D. Section 348 makes Section 1326(a)(1) Applicable To Reconverted Chapter 13 Cases**

Section 348 makes section 1326(a)(1) applicable to conversions to chapter 13. 11 U.S.C. § 348; *see also In re Yao*, 548 B.R. 818, 822 (Bankr. D.N.M. 2016) (Section 348 "governs the effect of conversion from one chapter to another[.]").

Section 348, in relevant part, provides:

> (a) Conversion of a case from a case under one chapter of this title to a case under another chapter of this title constitutes an order for relief under the chapter to which the case is converted, but, except as provided in subsections (b) and (c) of this section,

> *does not effect a change in the date of* the filing of the petition, the commencement of the case, or *the order for relief.*

11 U.S.C. § 348(a) (emphasis added).

Section 348(a) specifically states that "[c]onversion…does not effect a change in the date of…the order for relief." *Id.*; *see also In re Estilette*, No. 18-11692, at 6 (Bankr. S.D. Ga. Jan. 27, 2020) (Citing to § 348 and holding that "[t]he conversion does not change the 'order for relief' date.") The exceptions in subsections (b) and (c) of § 348 do not apply to § 1326(a).

While the "unless the court orders otherwise" language in § 1326(a)(1) gives a court the discretion to authorize a debtor to commence the payment period from the date of conversion, a court will only use the discretion "*when merited.*" *In re Estilette*, No. 18-11692, at 8 (emphasis added). The *In re Estille* court held that the use of the court's discretion in a case initially filed under chapter 7 and converted to chapter 13 was merited because applying "the plain language of §1326(a) as amended in 2005, produces an absurd, if not an impossible result[.]" *Id.* at 5. In that case, the court reasoned, the plain language of § 1326(a) produced an absurd or impossible result because "[u]nless conversion occurs within 30 days after the filing of the Chapter 7 case…a debtor cannot timely commence payments within 30 days from the date of the entry of the order for relief." *Id.* at 6 (citing to Honorable W. Homer Drake, Jr., Honorable Paul W. Bonapfel, and Adam M. Goodman, *Chapter 13 Practice & Procedure*, §4:7 (2019) *That* court determined that the "solution to this conundrum is for such a debtor to request the Court to "order otherwise" under §1326(a) and establish a different date for the plan payments to commence or for the chapter 13 plan to provide a different commencement date." *Id.* at 7.

However, a court's use of discretion available under § 1326(a)(1) in cases reconverted back to chapter 13 is *not merited*. This is because the payments in a reconverted chapter 13 case have typically already commenced and the plain language of § 1326(a) would no longer render an absurd

or impossible result. *See Id.* at 5 ("[U]nambiguous plain language of the statute controls unless doing so would produce an absurd result."(Citing *Lamie v. U.S. Tr.*, 540 U.S. 526, 534 (2004) ("It is well established that 'when the statute's language is plain, the sole function of the courts - at least where the disposition required by the text is not absurd - is to enforce it according to its terms.'")).

Accordingly, pursuant to the sections of the Code above, the plain language of the Bankruptcy Code dictates that above-median-income debtors who have reconverted back to chapter 13 must propose post-reconversion chapter 13 plans with a maximum repayment period of not more than five years commencing from the date of the first plan payment due under the original chapter 13 plan.

## II. Case Law Supports That Plan Payments in Reconverted Chapter 13 Cases Commence When the First Payment Was Due Under the Original Plan

In *In re Yao* the debtor converted the chapter 13 case to a case under chapter 7 with only four out of fifty-eight payments remaining under the confirmed chapter 13 plan. *In re Yao*, 548 B.R. 818, 820 (Bankr. D.N.M. 2016). That debtor converted to chapter 7 because he was concerned with his inability to continue making plan payments. *Id.* Within approximately two months after conversion, the debtor sought to re-convert the chapter 7 case back to chapter 13. *Id.* The chapter 13 trustee objected arguing that "upon conversion of a Chapter 13 case to Chapter 7, a confirmed Chapter 13 plan becomes a nullity and cannot be reinstated… [and] the Debtor must begin the Chapter 13 process anew [including]…proposing a new plan." *Id.* at 821. In other words, that trustee, as the *Yao* court summarized, argued that the debtor in the reconverted case "may not complete the Chapter 13 process by simply making the four payments outstanding under the Confirmed Plan." *Id.*

Page **8** of **12**

Analyzing the effect of converting back to chapter 13, that court held that conversion to chapter 7 does not nullify, void, vacate or otherwise terminate the plan or the order confirming the chapter 13 plan. "The confirmed Chapter 13 plan is simply no longer binding following conversion to Chapter 7 because the provisions of Chapter 13 no longer apply. " In re Yao, 548 B.R. at 822-23 "But the plan and the order confirming [the] plan nevertheless still exist." *Id.* at 822. "Upon reconversion, the Chapter 13 Trustee is reappointed and 11 U.S.C. § 1327(a) once again becomes applicable to bind the debtor and creditors to the terms of the existing plan that was confirmed before conversion to Chapter 7." *Id.* at 823. Reasoning that the debtor had only four payments remaining, filed his motion to reconvert within two months, and was able to complete all payments immediately, the court concluded there was "no need for further modification of the plan upon reconversion." *Id.* at 824. The Yao court held that the debtor may complete the payments under the original confirmed plan because the "existing plan again becomes binding because the provisions of chapter 13, including 11 U.S.C. § 1327(a), become applicable upon conversion to Chapter 13." *Id.* at 824. In arriving in its holding, the *Yao* court acknowledge that its ruling is "narrow and unique to the Debtor's particular circumstances." *Id.* at 824.

The court in *In re Green*, ruling on the chapter 13 trustee's objection to confirmation of debtor's proposed post-reconversion plan, considered whether to reinstate the original plan or to require confirmation of a new plan. *In re Green*, 169 B.R. 480, 481 (Bankr. S.D. Ga. 1994). In that case, the debtor originally proposed a sixty-month chapter 13 plan. *Id.* The debtor converted his chapter 13 case to chapter 7 forty-five months after commencing plan payments. *Id.* During the chapter 7 case, a mistake in the mortgage figures was discovered leading to additional equity in the debtor's home. *Id.* To protect the home from liquidation by the chapter 7 trustee, the debtor sought reconversion back to chapter 13. *Id.* About 4 months after converting to chapter 7, the court re-converted the case back to chapter 13. *Id.* The court, after determining that the newly discovered

Page **9** of **12**

equity was a prepetition asset and that a higher dividend to unsecured creditors was needed, reasoned that the conversion to chapter 7 "nullified the order confirming the original plan…and presentation of a new plan [that meets all requirements for confirmation under 11 U.S.C. § 1325 ] is required." *Id.* at 481-83. Accounting for the payments and the period of time (forty-five months) the case was pending under the original plan prior to conversion to chapter 7, and reasoning that § 1322 sets a maximum time period for plan payments to 60 months, the court limited the term of the new plan to 15 months — the period of time remaining under the original plan after conversion to chapter 7. *Id.* at 483, n. 4. According to that court, a period longer than 15 months "could be considered unreasonable delay and evidence of bad faith." *Id.* at 483.

In *In re Marshall*, the debtors filed their petition under chapter 13 in August, 2008. *In re Marshall*, No. 08-16022-JNF, at 1 (Bankr. D. Mass. Sep. 20, 2018). The court confirmed the chapter 13 plan fourteen months later in January, 2010. *Id.* The confirmation order provided that Debtors were to make forty-seven more payments pursuant to the plan. *Id.* at 3. In April, 2014, Debtors converted the case to chapter 7. *Id.* The case was closed in October, 2014. *Id.* at 2. In March, 2017, the chapter 7 trustee filed a motion to reopen the chapter 7 case to administer a discovered asset and the case was reopened. *Id.* at 2. The debtors moved to reconvert the chapter 7 case back under chapter 13. *Id.* The chapter 13 trustee objected to the reconversion arguing that "the Confirmed Plan expired on July 1, 2013 and that the Debtors failed to complete the confirmed plan." *Id.* at 3. The chapter 13 trustee further argued "that the Debtors' plan cannot be modified and/or completed and therefore there is no legitimate purpose to converting back to chapter 13." Id. at 5. The court agreed with the chapter 13 trustee. *Id.* Citing to § 1329(c) the court denied the Debtors' motion to reconvert reasoning that "[a] modified plan may not…extend more than five *years from the due date of the first payment under the original confirmed plan*." *Id.* at 5-6 (emphasis original, internal citations and citation omitted).

Page **10** of **12**

All 3 courts above in considering the term length of the plan in the context of reconversion to chapter 13 acknowledged the existence of the original confirmed plan, the payments made, and the remaining time in the term of that plan. Not one court used the discretionary language of § 1326(a)(1) to change the commencement date of plan payments to the date of conversion.

Furthermore, it can be inferred from the cases above that a court has discretion to apply the appropriate approach most applicable to the specific facts of the reconverted case. *See Germeraad v. Powers*, 826 F.3d 962, 974 (7th Cir. 2016) (Where "Congress did not provide express standards ¼ it necessarily left the development of those standards to the courts.").

### III. Legislative Intent Favors a Post Reconversion Plan Payment Term of Not More Than Five Years

Congressional intent also supports a post-reconversion plan with a repayment period that commences from the date when the first payment was due under the original chapter 13 plan. This is so because courts have held that Congress intended to limit the time period of chapter 13 plans. *See In re Klaas*, 858 F.3d 820, 830 (3d Cir. 2017) (Stating that "[i]n response to Congress's evident concern about debtors being forced to remain in repayment plans indefinitely, the [The Bankruptcy Reform Act of 1978] capped the plan term at five years, an amendment…intended to provide 'a shield' for debtors rather than 'a sword' for creditors."). *See also In re Grant*, 428 B.R. 504, 508 (Bankr. N.D. Ill. 2010) (Stating that "Congress intended to limit the time period of a Chapter 13 plan in order to protect debtors from involuntary servitude. The purpose of the plan term limitation in Chapter 13 is to avoid debtors becoming 'wage slaves.'").

In the present case, Mr. Saldivar converted his chapter 13 case to chapter 7 after making approximately twenty-four out of sixty plan payments. After learning his chapter 7 case was presumed abusive he reconverted back to chapter 13 approximately two months later. Under the

remaining term of the Confirmed Plan Mr. Saldivar has 36 payments remaining. He has also cured his default. The Clerk's Notice of Conversion to Chapter 13 Case served on all parties of interest included a new claims bar date, a new meeting of creditors date, and new confirmation date. Mr. Saldivar's financial circumstances have changed as his household size has increased due to the birth of a child and Mr. Saldivar has also incurred (due to under-withholding) an income tax liability to the IRS for the 2021 tax year.

Accordingly, due to the facts stated above, Mr. Saldivar respectfully proposes that the appropriate approach for this case is the confirmation of an amended plan to be proposed under § 1323. Proceeding under § 1323 is the logical and ideal approach as an amended plan filed under § 1323 will be drafted on a national form, served on all creditors, and will incorporate the payments and the length of the plan term from the Confirmed Plan thus incorporating the amount of payments already made and the commencement date of the first payment under the Confirmed Plan.

## CONCLUSION

WHEREFORE, the Debtor respectfully requests that the Court overrule the Chapter 13 Trustee's Objection to Confirmation to the extent the Objection demands the Debtor to propose a post-reconversion plan consisting of a 60-month repayment period that commences from the date of conversion, or in the alternative that the Court grant the Debtor any other relief that is proper and just.

Respectfully Submitted,

Dated: November 21, 2022

/s/ *Arthur Corbin*
Arthur Corbin, ARDC#6305658
Attorney for Debtor
CORBIN LAW FIRM, LLC
2500 E. Devon Ave., Ste. 275
Des Plaines, IL 60018
Tel: (773) 570-0054
arthur@corbin-law.com